**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CSX TRANSPORTATION, INC., | Case No. 1:15-cv-376 |
| Plaintiff, | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| VINCENT STEVENSON, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This case was referred to the undersigned magistrate judge pursuant to local practice, because all of the Defendants initially proceeded *pro se*. Plaintiff CSX Transportation, Inc. ("CSX") has filed a motion for summary judgment against the lone remaining Defendant, Patricia Stevenson (hereinafter "Patricia" or "Ms. Stevenson"), who recently retained counsel for the second time. For the following reasons, I recommend that CSX's motion be granted, and that judgment be entered against Ms. Stevenson

**I.    Background**

On June 5, 2015, CSX filed this action against five individuals and two companies,[1] alleging claims of breach of contract, promissory estoppel, unjust enrichment, civil conspiracy, and fraud, arising out of prior sales of scrap metal. (Doc. 1). When Defendants failed to answer, the Clerk filed entries of default, including an entry against Patricia Stevenson on August 17, 2015. (Doc. 9). However, on September 27, 2015, Patricia Stevenson appeared through then-newly retained counsel

---

[1]One of the individual Defendants is identified as "Vincent Stevenson d/b/a Icon Works."

and moved to set aside the entry of default against her. That motion was later granted by the presiding district judge. (Docs. 14, 18). Counsel moved to withdraw from representation less than a year later, and Ms. Stevenson returned to her *pro se* status until last month.

Since none of the Defendants initially appeared and entries of default had been filed against all of them, CSX moved for default judgment against all Defendants, jointly and severally, in the amount of $428,459.82. (Doc. 10). On March 1, 2016, the Court granted that motion *except* as to Patricia Stevenson, resulting in the termination of all claims except for a civil conspiracy claim against her.[2]

As detailed in Judge Beckwith's Order granting default judgment against Patricia's Co-Defendants,[3] all Defendants have intertwined and close familial relationships. Two of the Defendants (Vincent and Steven) are Patricia's sons, while another is her husband (Mitch). (Doc. 29). The business entities against which default judgment was entered were operated out of two residential properties, both of which are owned by Patricia. CSX also obtained default judgments in a related state court action against one of the entities, as well as against Mitch, Vincent, and Steven Stevenson. (Doc. 32 at 4; *see also* Doc. 32-6).

CSX's complaint alleges that Patricia had knowledge that her husband and two sons were "taking CSX's property by fraud without paying CSX." (Doc. 1, ¶189). Plaintiff seeks judgment against Patricia in the same amount previously awarded jointly and severally against the remaining Defendants. (Doc. 1 at 22).

After default judgment was entered against all other Defendants, CSX sought

---

[2]By the time that the Court ruled on the motion, the Court had granted Ms. Stevenson's motion to set aside the entry of default against her.
[3]This case was reassigned to U.S. District Judge Timothy S. Black on January 3, 2017.

discovery on the lone civil conspiracy claim remaining against Ms. Stevenson. On June 27, 2016, CSX took Defendant's deposition at her attorney's office. (Doc. 32 at 3). However, neither of Patricia's two sons nor her husband appeared for their properly noticed depositions, prompting the Court to grant a motion to compel the three men to appear. (*See* Docs. 32, 36). Consistent with that Order, discovery was extended from the prior deadline of August 1, 2016 until October 31, 2016, with the dispositive motion deadline extended until November 30, 2016. (Doc. 35).

Two days after Ms. Stevenson's deposition, on June 29, 2016, counsel advised her of their intent to withdraw due to an "irreparable conflict" and notified her that counsel would wait thirty days prior to filing a formal motion, to allow her time to secure new counsel. Counsel filed their motion to withdraw after additional attempts to communicate with their erstwhile client proved unsuccessful. The motion states that Ms. Stevenson has "ceased communicating effectively with counsel." (Doc. 33).

In a telephonic conference conducted on August 22, 2016, counsel reiterated Patricia Stevenson's refusal to respond or communicate.[4] In granting the motion to withdraw, the undersigned found all conditions of Local Rule 83.4(c)(4) to have been met. The Court held that "by her refusal to communicate [Ms. Stevenson] has consented to the withdrawal of counsel and/or has effectively terminated services," and ordered her to "NOTIFY THIS COURT IN WRITING, on or before **September 22, 2016**, whether she intends to proceed *pro se*, meaning without benefit of counsel." (Doc. 37).

Consistent with her prior *pro se* inactions, Ms. Stevenson failed to respond to the Court's August 24, 2016 Order. Therefore, on October 7, 2016, the Court informed Defendant that she would be required to proceed *pro se*, and "shall be expected to

---

[4]The only indirect "communication" counsel had was when Mitch Stevenson stopped by counsel's office to pick up his wife's remaining funds.

3

follow all Court established deadlines and rules as if she were represented by counsel." (Doc. 38).

At the request of CSX, the Court subsequently set a telephonic discovery conference to discuss Plaintiff's continuing inability to obtain discovery, including CSX's inability to depose Patricia's husband and sons pursuant to the Court's prior order compelling their depositions. Patricia Stevenson was properly notified of the telephonic hearing, but failed to appear. (*See* Minute Entry of 11/01/16). Later the same day, CSX filed a motion for an order to deem its Requests for Admission as Admitted. On November 29, 2016, after Ms. Stevenson once again failed to file any timely response, the Court granted Plaintiff's motion and ordered the Requests to be "admitted in their entirety as a matter of law." (Docs. 41, 42).

Based on those admissions, Plaintiff CSX moved for summary judgment on November 30, 2016. Unsurprisingly, Defendant Patricia Stevenson also failed to file any timely response to that motion. Based on the practice of this Court, the undersigned provided one final opportunity to the *pro se* Defendant to "SHOW CAUSE, in writing on or before February 7, 2017, why the pending motion for summary judgment against her should not be granted for the reasons stated." (Doc. 46).

On the date of the "show cause" deadline, newly retained counsel entered his appearance and filed an overdue response in opposition to the pending motion for summary judgment. (Docs. 47, 48). On February 22, 2017, Plaintiff CSX filed a reply memorandum, arguing that Ms. Stevenson cannot overcome the facts established through the entry of prior default judgment against all Co-Defendants, and through her own prior admissions in this case. I agree.

4

## II. Analysis

### A. Summary Judgment Standard

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts - in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Although reasonable inferences must be drawn in favor of the opposing party, *see*

*Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-587 (citation omitted).

### B. Facts and Law Favor Summary Judgment

As should be clear from the above synopsis of the record, during the substantial portion of time in which Patricia Stevenson has proceeded *pro se*, she has deliberately chosen to do nothing in this litigation, failing to timely respond to the original complaint, failing to respond to discovery, and failing to respond to motions and court orders. She narrowly averted the entry of default judgment by retaining counsel who succeeded in setting aside an Entry of Default.[5] However, less than a year later, an irreparable conflict arose and she ceased communicating with her counsel, leaving her counsel no recourse but to withdraw from representation. Only on the eve of the entry of summary judgment against her did Ms. Stevenson retain new counsel, who once again hopes to save his client from judgment, this time based on little more than the same affidavit submitted by her first counsel to set aside the Entry of Default.

This is too little, too late. The September 25, 2015 affidavit filed at the pleading stage is not sufficient to raise a genuine issue of material fact at this late stage of the proceeding, and Ms. Stevenson presents no other evidence or argument that would create any dispute of fact or law.

---

[5]The affidavit prepared by counsel and filed with Plaintiff's September 27, 2015 motion to set aside the Clerk's Entry of Default attests that Ms. Stevenson only learned from her husband "within the past week" that she had been named as a party to this lawsuit. That representation conflicts with evidence that Ms. Stevenson was personally served with the Summons and Complaint by a deputy in the Warren County Sheriff's Office on July 20, 2015. (Doc. 6).

6

The previous default judgments establish that Patricia's husband Mitch, her two sons, and the two business entities operated out of properties that she owns, and engaged in and orchestrated a conspiracy to defraud CSX out of the value of its property. Critical facts relating to Ms. Stevenson also have been deemed admitted by order of this Court. Those admissions are conclusively established, *see* Rule 36(b), Fed. R. Civ. P., and Defendant has not moved to withdraw those admissions or otherwise amend them. (Doc. 42, admitting Requests at Doc. 41-1). Matters deemed admitted from a failure to respond to requests for admissions can serve as a basis for granting summary judgment. *Liberty Steel Products, Inc. v. Acore Door Co.*, No. 4:05CV1124, 2006 WL 1473509, at *2 (N.D. Ohio May 23, 2006) (citing *Lovejoy v. Owens*, 86 F.3d 1156 (Table), No. 94-4224, 1996 WL 287261, *1 (6th Cir. May 28, 1996)).

In light of her admissions, Ms. Stevenson cannot simply rely upon an affidavit tendered with her belated Answer to create a genuine issue of material fact. *See, e.g., Commonwealth Land & Title Co. v. Howard*, 2016 WL 1255719 at *8 (E.D. Ky. March 29, 2016) ("This Court is not aware of any case law stating that a failure to respond to a request for admission cannot conclusively establish a fact when the defendant has previously filed an answer denying the same fact."). In addition, "matters inconsistent with admissions conclusively established under Rule 36 cannot be considered by the Court" when ruling upon a motion for summary judgment. *Marietta v. Hartford Underwriters Ins. Co.*, 198 F.3d 245 (6th Cir. 1999) (unpublished, text available at 1999 WL 1021852) (quoting *Haun v. Humana Inc.*, 651 F. Supp. 120, 122 (W.D. Ky. 1986)).

The affidavit upon which Ms. Stevenson relies was tendered in support of her motion to set aside the entry of default, but prior to the commencement of any

7

discovery. Case law confirms that if the same affidavit had been submitted post-discovery, it would be insufficient as a matter of law to overcome her Admissions and defeat summary judgment. *See United States v. Certain Real Prop. Located at 116 Girard, Royal Oak, Oakland City, Mich.*, 791 F. Supp.171, 173 (E.D. Mich. 1992) ("It is well settled that a party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations that contradict prior admissions, deposition testimony, or otherwise sworn testimony."). The undersigned can conceive of no grounds for obtaining a different result where the conclusory affidavit was drafted prior to the commencement of discovery, and subsequent discovery contradicted her preliminary statements. To hold otherwise would be to wholly undercut the intended conclusive nature of Admissions under Rule 36. *Accord Richland County Dept. of Job and Family Services*, 2006 WL 2864315 at *3 and n.1 (N.D. Ohio Oct. 4, 2006)(granting summary judgment on basis of admissions, pointing out that was "not in any way unfair to [a party] who had repeatedly engaged in delay.").

Having determined that the September 2015 affidavit cannot overcome Ms. Stevenson's admissions, the key question is whether her admissions and other evidence against her co-Defendants are sufficient to prove CSX's claim against Ms. Stevenson. To prove a civil conspiracy, CSX was required to show: (1) a malicious combination; (2) involving two or more persons; (3) causing injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Universal Coach, Inc. v. New York City Transit Auth. Inc.*, 90 Ohio App.3d 284, 292, 629 N.E.2d 28, 33 (Ohio App. 8 Dist1993) (internal citation omitted). Ms. Stevenson concedes that a "malicious combination," involving two or more of her family members, conspired and perpetrated fraud upon CSX, resulting in a substantial monetary loss to

8

CSX. To that extent, Ms. Stevenson does not and cannot contest that a civil conspiracy occurred.

What Ms. Stevenson does contest is her own involvement and personal liability. Relying upon her original affidavit and Answer, Ms. Stevenson claims ignorance of the conspiracy – essentially that she was an innocent spouse and innocent parent. (*See e.g.*, Doc. 47, Affidavit at ¶¶ 8, 11, 12, 14, stating she has "no knowledge of the day-to-day operations of any business(es)," has "no knowledge of the bidding process," had never heard of CSX prior to this lawsuit, and had no knowledge of the contracts or projects referenced in the complaint). Patricia argues that she should not be held personally liable because she herself did not make any fraudulent misrepresentations to CSX. However, CSX persuasively argues that all that it is required to show is a "common design or understanding, even though it be a tacit one" on the part of Ms. Stevenson. *See Pumphrey v. Quillen*, 141 N.E.2d 675, 680, Ohio App. 9 Dist. 1955) ("[A]ll of those who actively participate, by cooperation or request, in a tortious act to defraud which results in damage, or who lend aid to the wrongdoers, or ratify or adopt the acts done for their benefit, are equally liable…. Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.").

Ms. Stevenson's admissions are sufficient to conclusively establish her liability, because Ms. Stevenson admits that she understood the conspiracy to defraud CSX, cooperated in the conspiracy, and benefitted from the fruits of the conspiracy. Specifically, CSX relies upon the following admissions:

- Patricia was an authorized agent of Lego, had access to Lego's bank accounts, and routinely conducted business on Lego's behalf during the Relevant Time Period. (Request No. 1).

9

- Patricia was aware of the fraudulent scheme Mitch, Steven, and Vincent, individually and through their respective entities and/or fictitious names (Lego, MBCD, and Icon Works), were orchestrating the taking of CSX's property without paying CSX. (Request No. 3).

- Patricia understood that Mitch, Steven, and Vincent, individually and through their respective entities and/or fictitious names (Lego, MBCD, and Icon Works), were deceiving CSX, taking CSX's property, selling CSX's property, and retaining the profit of the sale of CSX's property with no intent to pay CSX any amounts except the minimal $10,000 paid by MBCD to induce CSX to continue extending credit for the purchase of scrap. (Request No. 4).

- Patricia understood her role in the fraudulent scheme was to hold assets, such as real estates and luxury cars, for her family members in her name while Mitch, Steven, and Vincent incurred debts they did not intend to repay. (Request No. 5).

- Patricia was aware of and assisted Vincent in his efforts to deceive CSX out of its property worth $129,720.00. (Request No. 14).

- Patricia was aware of and assisted Mitch, individually and through Lego, in his efforts to deceive CSX out of its property worth $195,634.64 for the Winchester Project and Hawthorne Project. (Request No. 23).

- Patricia was aware of and assisted Steven, individually and through MBCD, in his efforts to deceive CSX out of its property worth $109,980.00 for the Winchester Project and Hawthorne Project. (Request 30).

- Patricia was aware of…Mitch, Steven, and Vincent working together to take CSX's property and assisted in their efforts. (Request 33).

- Patricia received the benefit from the scrap metal taken from CSX without paying. (Request 34).

- Patricia allowed one or more of Mitch, Steven, and Vincent to use, access, or deposit money into depository accounts owned by and/or controlled by Patricia in order to deposit the proceeds of the sale of CSX''s scrap or otherwise use the accounts to further the efforts by Mitch, Steven, and/or Vincent to take CSX's property with no intent of paying CSC. (Request No. 35).

- Defendants, including Patricia, conspired to take CSX's property in the Owensboro Project, Winchester Project, Hawthorne Project, Hamilton Project, and Louisville Project by deceit. (Request No. 37).

- Each of the Defendants [including Patricia] shared in the objective to taking

> CSX's property by entering into contracts and paying CSX as little as possible to remove the scrap metal from CSX's possession. (Request No. 38).
> 
> - Patricia co-conspired with the Defendant to defraud CSX from its property. (Request No. 39).

(Doc. 41-1).

As a whole, these admissions conclusively establish that Patricia was aware of and understood the fraudulent scheme and her role in it, assisted her co-conspirators in deceiving CSX, allowed her co-Defendants to use her accounts and property held by her to facilitate the scheme, benefitted from the fraud, shared the objective of the conspiracy, and actively conspired with her co-Defendants. Last but not least, she admits her liability in the amount of $428,459.82. (Request No. 40). Ms. Stevenson not only fails to establish an "innocent spouse" type of defense, but her admissions provide a substantial basis for her personal liability. *See generally In re Cottingham*, 473 B.R. 703 (Bank. App. Panel 6th Cir. 2012) (spouse had knowledge of and participated in scheme to convert pilfered funds, where he used money from a joint account, was aware of the cost of household improvements , and could not reasonably have believed that their lifestyle was supported by earned income).

Under Ohio law, joint and several liability is imposed upon co-conspirators, since the acts of the co-conspirators are attributed to each of them. *See Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 999 N.E.2d 241, 256 (Ohio App. 6 Dist. 2013). In addition to her own actions and the facts established by the entry of Default Judgments against her co-defendants, Ms. Stevenson has admitted specific actions taken by those co-conspirators in furtherance of the conspiracy to defraud CSX. (*See generally*, Doc. 41-1, Request Nos. 2, 6-13, 15-22, 24-29, 31-32, 36). Ms. Stevenson's contention that her admissions prove nothing more than that she was "holding" assets is not

11

persuasive, in part because it requires this Court to ignore all of the admissions except for her admission to Request No. 5. As set forth above, many other admissions establish her part in the conspiracy.

Ms. Stevenson also suggests, without citation to any supporting evidence, that many of the assets were "acquired many years before the first date" of the fraudulent actions taken by her husband and sons, such that her "holding" them fails to prove her connection to the conspiracy and fails to establish a "causal nexus." (Doc. 47 at 4). Also without citation to evidence, Ms. Stevenson asserts that the assets that she held "played no role whatsoever in the conspiracy, were not relied upon by Plaintiff in making any decisions, and were not material in any way to the conspiracy or the underlying tort of fraud." (*Id.*). Aside from the fact that she provides no evidentiary support for these statements that can be considered by this Court, her arguments are irrelevant in light of her admissions.

A party responding to a motion for summary judgment must present specific facts and "affirmative evidence… to defeat a properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Rule 56(c) explains that a party asserting that a fact is genuinely disputed must support that assertion by:

> (A) Citing to particular parts of materials in the record, including depositions, documents…, affidavits or declarations…, admissions, interogtory answers, or other materials, or
>
> (B) Showing that the materials cited do not establish the absence or presence of a genuine dispute….

*Id.* In addition, an affidavit used to oppose a motion must set out "facts that would be admissible in evidence…." Rule 56(c)(4). When a party fails to properly address another party's assertion of fact as required, the court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). Here, Ms. Stevenson's unsupported

arguments are insufficient to create any genuine issue of material fact.

Ms. Stevenson also makes brief reference to her June 2016 deposition testimony, which purportedly was "entirely different than the Requests for Admissions." (Doc. 47 at 3). Notably, Ms. Stevenson does not attach any portion of the deposition transcript to her response. Without the deposition or so much as a quotation or citation to any particular page of the transcript, this Court cannot and will not consider counsel's broad assertion that her testimony was "entirely different" than the otherwise uncontested evidence presented in favor of summary judgment.[6]

### III.  Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** the motion of Plaintiff CSX for summary judgment (Doc.43) be **GRANTED**, and that judgment in favor of CSX and against Defendant Patricia Stevenson be entered in the amount of $428,459.82, representing her joint and several liability with all co-conspirators.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[6] For its part, CSX maintains that "many of the characterizations of Ms. Stevenson's deposition testimony…are inaccurate." (Doc. 50 at 3, n.1). By way of example, CSX states that Defendant testified regarding her knowledge of the operations of Lego Demolition, LLC, her involvement in banking practices for business conducted by Lego and her husband, her receipt of checks for scrap metal sales, and her designation as "Administration" on the bank account for Lego. (Id.) Because CSX also has failed to file the transcript or relevant portions thereof, CSX's characterizations of the deposition testimony also cannot be considered.